JOHN A. RUSSO, City Attorney - State Bar #129729
RANDOLPH W. HALL, Chief Assistant City Attorney - State Bar #080142
RACHEL WAGNER, Supervising Trial Attorney - State Bar # 127246
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 637-0268     Fax: (510) 238-6500
23245/333755

Attorneys for Defendant
CITY OF OAKLAND
(OAKLAND POLICE DEPARTMENT)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON STEWART,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF OAKLAND; OAKLAND POLICE DEPARTMENT; SULLIVAN STALLLWORTH; and DOES 1 through 50, inclusive.<br><br>　　　　　Defendants. | Case No. C 03-5800 CRB<br><br>**DEFENDANT CITY OF OAKLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**<br><br>Date: December 24, 2004<br>Time: 10:00 a.m.<br>Ctrm: 8<br><br>Trial Date: January 24, 2005 |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# TABLE OF CONTENTS

Page No. (s)

I. INTRODUCTION ................................................................................................. 2

II. FACTUAL BACKGROUND ................................................................................. 3

III. LEGAL DISCUSSION ......................................................................................... 4

    A. Statute of Limitations Bars ........................................................................ 4

        1. The State Law Claims Before September 2002 Are Barred By Failure to Comply With The Government Tort Claims Act. ............................................................................. 5

        2. State Law Claims Before 2002 Are Barred By The Statute of Limitations. ............................................................... 6

        3. The Section 1983 Claim Can Only Go Back To 2002. ................. 7

    B. Stallworth's Alleged Actions Were Not In The "Course and Scope of Employment" Under State Law ................................................ 7

    C. Defenses To Section 1983 Claim ............................................................ 11

        1. No Constitutionally Infirm Custom Or Practice ............................ 12

        2. No Deliberate Indifference ........................................................... 14

IV. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

Page No. (s)

## CASES

Bryan County Commissioners v. Brown, 520 U.S. 397, 407 (1997) ................13, 14, 15
Fraire v. City of Arlington, 957 F.2d 1268, 1278-1279 (5th Cir. 1992) .........................14
Gillette v. Delmore, 979 F.2d at 1349 .........................................................................13
Gillette, 979 F.2d at 1379............................................................................................15
Languirard v. Hayden, 717 F.2d 220, 227-228 (5th Cir. 1983)....................................14
Maldonado v. Harris, 370 F.3d 945, 954-955 (9th Cir. 2004).....................................7, 8
Monell v. New York City Dept. of Social Svces., 436 U.S. 658, 694 (1978)................13
Oklahoma City v. Tuttle, 471 U.S. 808, 819 (1985) ....................................................13
Rogan v. City of Los Angeles, 668 F. Supp. 1384, 1395 (C.D. Cal 1987)...................14
Trevino v. Gates, 99 F.3d 911, 918 (9th Cir, 1996).....................................................13

## STATUTES

53 Cal.3d at 217-19 ......................................................................................................9
Ducey v. Argo Sales Co., 25 Cal.3d 707, 721 (1979) ...................................................9
Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 1004 (1995) ...........9, 10
Gatto v. County of Sonoma, 98 Cal. App. 4th 744, 763-764 (2002)..............................7
Hart v. County of Alameda, 76 Cal. App. 4th 766, 778-782 (1999)...............................7
Jane Doe v. City of Murrieta, 102 Cal. App. 4th 899 (2002)..................................10, 11
K.G. v. County of Riverside, 106 Cal. App. 4th 1374 (2003)..................................11, 12
Lisa M. v. Henry Mayo Newhall Memorial Hosp., 12 Cal.4th 291, 297 (1995)...............9
Mary M. v. City of Los Angeles, 54 Cal.3d 202 (1991)............................................9, 12
Murray v. Oceanside Unified School Dist., 79 Cal. App. 4th 1338, 1363 .......................7
San Diego Police Officers Assn. v. City of San Diego, 29 Cal. App. 4th 1736
    (1994) ......................................................................................................................10
West Shield Investigations & Sec. Consultants v. Superior Court, 82 Cal.
    App. 4th 935 (2000).................................................................................................7
White v. County of Orange, 166 Cal. App. 3d 566 (1985)...........................................10

## RULES

42 U.S.C. § 1983 ..........................................................................................................5

## TREATISES

California Government Code Section 911.2..................................................................7

## I. INTRODUCTION

The City of Oakland brings this motion for partial summary judgment, in a case arising from a personal sexual relationship between Ms. Stewart and Officer Stallworth that spanned four years. The parties first had sexual relations in December 1998. Their last sexual encounter was on December 27, 2002. Stewart did not file a claim against Stallworth until January 9, 2003, and as to the City, March 10, 2003.

Plaintiff's claims against the City do not pass muster as a matter of law. First, plaintiff's claims based on events prior to September 10, 2002 are barred by failure to comply with the six-months filing period under the California Government Tort Claims Act. California's one-year statute of limitations separately bars all of plaintiff's claims based on events prior to 2002. The only encounter not barred under state law was the parties' last meeting on December 27, 2002, in which Stewart claims she was raped.

Plaintiff apparently seeks to recover on her state tort claims from the City under the doctrine of *respondeat superior*. However, the extremely personal nature of the parties' years' long relationship and the nature of the tort take the December 27th incident far outside the "course and scope of employment." As a matter of law, plaintiff does not have recourse against the City for this private dispute.

Finally, plaintiff has brought a federal Monell claim under Section 1983, claiming that the City's custom and practice somehow forecast the events of December 27, 2002. There is no credible, admissible evidence that Officer Stallworth committed the alleged rape because of any unconstitutional policy of the City. Equally important, there is no evidence of deliberate indifference by the City that was the moving force behind the

alleged assault.

The Police Department has investigated Ms. Stewart's complaint and recommended Stallworth's termination. The facts of this case do not support municipal liability under any legitimate theory, and the City should be dismissed.

## II.     FACTUAL BACKGROUND

Sharon Stewart and Officer Sullivan Stallworth met when he responded to a domestic disturbance call in November 1998.  [Defendants' Supporting Evidence (DSE"), Exh. A, Tab 1 (Stewart Depo.) at 70:25-71:19.]  A month thereafter, Stewart and Stallworth first had sexual intercourse.  [DSE, Exh. A, Tab 2 (Stewart Depo.) at 43:7-11.]  Ms. Stewart was separated from her husband for long periods between November 1998 and December 2002, while her husband was in jail or living with his girlfriend.  [Id. at 22:19-24:8, 40:22-41:16.]  During the few months that Stewart was with her husband between November 1998 and December 2002, she did not have sexual relations with Stallworth.  [DSE, Exh. A, Tab 1 at 159:20-160:15.]

Between December 1998 and December 2002, the parties had sexual intercourse nine times.  [DSE, Exh. A, Tab 1 at 68:14-69:21.]  In the first half of 2001 the parties had sex three times, and no sexual contact after June 2001.  [Id. at 220:4-21, 224:22-25.]  In 2002 the parties had intercourse twice, first in April 2002 and then in December 2002.  [Id. at 220:12-14, 247:6-7.]  In the several months between the two sexual encounters in 2002, plaintiff does not recall seeing Stallworth.  [Id. at 247:9-11.]

On December 27, 2002, according to plaintiff, she was raped by Stallworth. That afternoon, the parties arranged on the telephone to meet at a warehouse where

1  Stallworth stored his RV.  [Id. at 257:5-264:15.]  Ms. Stewart went there and waited about
2  five minutes for him to arrive.  [Id. at 266:2-4.]  Stallworth came to the warehouse in
3  uniform and was apparently on duty.  [Id. at 272:3-4.]  Ms. Stewart claims that they then
4  went to his RV and had non-consensual sex.  [Id. at 271:18-278:16.]  After their encounter
5  in Stallworth's RV, Ms. Stewart made two calls from the scene to her lawyer here (Sandra
6  Springs) and to C.D. Williams.  She also stayed in her car, while Stallworth was closing the
7  building, to take notes of the incident that day.  She then drove to Wal-Mart in San
8  Leandro to exchange a Christmas gift, and visited her mother-in-law with no mention of the
9  incident.

10       Ms. Stewart first filed a claim regarding her sexual relationship with
11 Stallworth on March 10, 2003.  [DSE, Exh. A, Tab 4.]  She claimed that none of the sexual
12 interactions with Stallworth were consensual, and that she had been coerced.  [Id.]
13       After initially filing tort claims in state court, plaintiff amended her complaint
14 to add a claim under 42 U.S.C. § 1983.  The City is sued under a Monell theory as to
15 Section 1983, a claim of negligent supervision under state law and, apparently, under a
16 theory of *respondeat superior* as to the remaining state law claims.

### III.   LEGAL DISCUSSION

#### A.   Statute of Limitations Bars

Ms. Stewart's claims are almost entirely barred by the applicable statutes of limitations.  As both a policy and legal matter, this bar is a matter of common sense.  Ms. Stewart purports to bring claims based on a personal relationship going back to November 1998, more than four years before she first filed any sort of claim.  She seeks damages for

DEFENDANT CITY OF OAKLAND'S                4                    No. C-03-5800-CRB (MEJ)
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

different sexual encounters that occurred as far back as December 1998.

Ms. Stewart's sexual contacts with Sullivan Stallworth began in December 1998, about a month after they met. Their contacts were intermittent. While both Stewart and Stallworth were married, for much of the period Stewart was separated from her husband who was in jail for various offenses. Ms. Stewart testified that she did not engage in any sexual contact with Stallworth when she and her husband were reunited, periods that lasted months at a time.

Moreover, in 2001 and 2002, the sexual interactions between Stewart and Stallworth were sporadic. In 2001, they had sexual relations three times – the last time before June 2001. The parties had only two sexual encounters in 2002. In March or April 2002, Stewart and Stallworth had sexual relations. Stewart did not see Stallworth again until the December 27, 2002 incident in the RV.

The lengthy interludes between the allegedly tortious sex acts leave Stewart no excuse for failing to file a claim within the Government Tort Claims Act limitations period or the statute of limitations.

### 1. The State Law Claims Before September 2002 Are Barred By Failure to Comply With The Government Tort Claims Act.

The First through Eighth Causes of Action seek damages for, respectively, sexual assault and battery, assault, battery, negligent supervision, violation of penal code/negligence per se, intentional infliction of emotional distress, false imprisonment, and violation of Civil Code Section 51.7. Since each of these causes of action seeks money damages, under California law each of plaintiff's claims is subject to the mandatory claims presentation requirements of the California Government Code. E.g., Gatto v. County of

Sonoma, 98 Cal. App. 4th 744, 763-764 (2002); Hart v. County of Alameda, 76 Cal. App. 4th 766, 778-782 (1999).

California Government Code Section 911.2 provides a strict six-month period for filing a claim against a public entity, a deadline that applies to each of Ms. Stewart's state law claims for damages. Ms. Stewart did not file a government claim until March 10, 2003. Given that Ms. Stewart first filed a claim in March 2003, the only alleged tort within the six-month period is the December 27, 2002 incident in the RV.

### 2. State Law Claims Before 2002 Are Barred By The Statute of Limitations.

Even if the six-month limitations period for filing a claim against the City did not exist, the state statutes of limitations bar her untimely claims too. C.C.P. § 340(3), covering every one of Stewart's tort claims, had a 1-year statute of limitations. Maldonado v. Harris, 370 F.3d 945, 954-955 (9th Cir. 2004). The cause of action accrues upon the commission of the act, and the limitations period begins to run at that time. See B. Witkin, California Procedure, Actions, §§ 510-511 (3d ed. 1996 & 2004 Supp.).

The terms of C.C.P. Section 340(3) expressly covered assault, battery, and false imprisonment. California courts also held that claims of infliction of emotional distress and violation of Civil Code 51.7 (civil rights) fell under the one-year statute. See Gatto, 98 Cal. App. 4th 744 (civil rights claims subject to one year statute); West Shield Investigations & Sec. Consultants v. Superior Court, 82 Cal. App. 4th 935 (2000) (same); Murray v. Oceanside Unified School Dist., 79 Cal. App. 4th 1338, 1363 (emotional distress claim subject to one year statute).

/ / /

Effective January 1, 2003, the limitations period of Section 340(3) was extended to 2 years.  See C.C. P. § 335.1.  However, by that time, any tort alleged by Stewart to have occurred in 1998, 1999, 2000, or 2001, had expired already under the terms of the one-year statute.  The only event in Ms. Stewart's complaint not long-barred was the December 27, 2002 incident. The earlier allegations fall far outside the limitations period, and those allegations may not form the basis for plaintiff's claims against the City as a matter of law. See Maldonado, 370 F.3d at 955.

### 3. The Section 1983 Claim Can Only Go Back To 2002.

Plaintiff's federal claims are also subject to the limitations period governing personal injuries under California law.  E.g., Maldonado, 370 F.3d at 954-955.  Federal law, however, governs the time for the accrual of the cause of action. Id. at 955.  Under federal law, a cause of action for violation of civil rights accrues "when the plaintiff knows or has reason to know of the injury which is the basis for the cause of action". Id.

Here, the allegations in the complaint make clear that plaintiff had reason to know of the alleged injuries to her civil rights in 1998.  Under Maldonado, any purported civil rights violation that occurred prior to 2001 is thus time barred.  Again, the only incident that falls within the limitations period is the alleged encounter on December 27, 2002, and plaintiff's claims may only proceed on the basis of that incident.

### B. Stallworth's Alleged Actions Were Not In The "Course and Scope of Employment" Under State Law.

Plaintiff has sued Officer Stallworth under numerous state tort theories, based on her claim that their sexual relationship was not consensual.  Plaintiff apparently seeks to recover from the City through the doctrine of *respondeat superior*. However, the

extremely personal nature of the sexual relationship between Stewart and Stallworth was not in the "course and scope" of his employment under California law.

For *respondent superior* to apply, a plaintiff must show that the employee's tortious conduct was committed within the scope of his employment. See, e.g., Ducey v. Argo Sales Co., 25 Cal.3d 707, 721 (1979). An employer is not liable for all actions of its employees during working hours. Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 1004 (1995). An employer is not liable for an employee's malicious or tortious conduct when "the employee *substantially* deviates from the employment duties for personal purposes." Id. at 1004-05 (and citations therein; emphasis in original). An employer will not be held liable for an assault that does not have a causal nexus to the employee's work. Lisa M. v. Henry Mayo Newhall Memorial Hosp., 12 Cal.4th 291, 297 (1995). If an employee's tort is personal in nature, "attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of *respondeat superior*." Farmers, 11 Cal.4th at 1004-05 (and citations therein).

Plaintiff presumably will argue that the case of Mary M. v. City of Los Angeles, 54 Cal.3d 202 (1991) permits the application of *respondeat superior*. In Mary M., an on-duty police officer stopped plaintiff at 2:30 a.m. for drunk driving. He detained her in his police car, took her home instead of to jail, and violently raped her there. The officer was convicted of rape and sent to state prison. Plaintiff relied on the theory of *respondeat superior* to sue the City of Los Angeles. The Court found that in the specific circumstances of that case, particularly the exercise of official authority in detaining a member of the public, *respondeat superior* applied. 53 Cal.3d at 217-19.

Mary M., and a single earlier case cited by that court,[1] are the only two cases in which a police officer's assault was brought within the *respondeat superior* doctrine. In the 13 years since Mary M., no published case has held a City liable for an officer's sexual assault.

Rather, in the years after Mary M., courts have limited the scope of that decision. Four years after Mary M., the California Supreme Court discussed those limitations in Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992. In Farmers, three female deputy sheriffs brought suit for sexual harassment against a male deputy sheriff and the County. The male deputy had lewdly propositioned and offensively touched the female plaintiffs. The California Supreme Court, distinguishing its earlier decision in Mary M., found that this sexual conduct fell outside the scope of employment. Id. at 1003-1010 (comprehensive review of the *respondeat superior* doctrine and its limitations). "The attempted analogy to Mary M. fails." Id. at 1012.

Three more cases have declined to apply Mary M. to police officers who were engaged in personal relations with someone they knew, as unrelated to their employment activities. In San Diego Police Officers Assn. v. City of San Diego, 29 Cal. App. 4th 1736 (1994), the Court of Appeal held that a police officer who had sex with a citizen informant, while on vacation, acted outside the scope of his employment. Two recent cases refused to apply *respondeat superior* to police officers committing sexual assaults while on duty. In Jane Doe v. City of Murrieta, 102 Cal. App. 4th 899 (2002), the City was not liable for the sexual abuse of two teenagers by an on-duty police officer. The

---

[1] See White v. County of Orange, 166 Cal. App. 3d 566 (1985) (on-duty sheriff detained female motorist late at night, drove her around for hours and threatened to rape and kill her, later convicted of kidnapping and false imprisonment).

minors had sexual encounters with the police officer/adviser for the youth program while he was on duty. "The focus is on whether the assault arose out of the exercise of job-created law enforcement authority over the plaintiff…" Id. at 907. There, the illicit sexual acts did not arise out of the exercise of the officer's job-created authority, the sexual acts were for personal gratification and not against a member of the public, and *respondeat superior* did not apply. Id. at 907-10 (distinguishing Mary M.).

Most recently, in K.G. v. County of Riverside, 106 Cal. App. 4th 1374 (2003), an instructive decision, the County was not liable for the sexual abuse of plaintiff, his stepdaughter, over a two and a half years period. It was not sufficient that the officer sometimes was in uniform or on duty. Id. Further, the fact that the officer "controlled and intimidated plaintiff by threatening to use his authority as a police officer against her if she did not cooperate" was not a sufficient nexus to his employment. Id. at 1382. The parties knew each other (in contrast to Mary M.) and there was no detention (in contrast to Mary M.). Id. at 1381-83. The case was a "far cry from an officer, during the course of enforcing the law, detaining and raping a woman who was previously unknown to the officer." Id. at 1382. "As in Farmers, the officer's sexual misconduct "was not against a member of the general public unknown to the officer … and did not arise in the course of the officer enforcing the law." Id. at 1385.

Here, the December 27, 2002 incident – the only tort claim not barred by the one-year statute of limitations – was far removed from Stallworth's scope of employment. The parties arranged to meet at a warehouse in Oakland. Stewart claims that Stallworth threatened to make trouble for her teenage son so she agreed to meet with him. Stewart arrived first and waited approximately five minutes. They proceeded to Stallworth's RV

and, according to Stewart, she was raped. At the scene, she made some phone calls from her car (one to her lawyer here), took notes of the incident, and then left for Wal-Mart.

The case before this Court is fundamentally different than Mary M.. Mary M. involved a traffic stop in which a member of the public was detained by a police officer in the course of his duties, then was taken somewhere and raped. Here, Ms. Stewart was not a "member of the public," far from it. She and Stallworth had known each other for more than four years. This was no random traffic stop or detention; the parties arranged to meet at a warehouse.

Stewart's allegation that family members were threatened was rejected by the K.G. court of appeal last year. The court refused to apply *respondeat superior* to a sexual assault between parties who knew each other. That the officer controlled or intimidated the plaintiff by threatening to use his authority did not justify construing a personal matter as job related. K.G., 106 Cal. App. 4th at 1382.

Even the Mary M. Court acknowledged that in some cases, "the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment." 54 Cal.3d at 213. This is one such case. The tort claims arise from a personal encounter between two people who knew each other and arranged to meet that day. Regardless of the outcome of those claims, the City is entitled to summary judgment.

C.   **Defenses To Section 1983 Claim**

As to the Section 1983 claim brought against the City, Stewart has a losing

struggle to effectively bring a <u>Monell</u> claim against the City based on her personal relationship with Stallworth.

### 1. No Constitutionally Infirm Custom Or Practice

It is fundamental that only constitutional deprivations visited pursuant to municipal 'custom' or 'policy' can lead to municipal liability. <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 819 (1985); <u>Monell v. New York City Dept. of Social Svces</u>., 436 U.S. 658, 694 (1978). Liability may not be imposed against a municipality for claimed violations of constitutional rights "unless <u>deliberate</u> action attributable to the municipality is itself the `moving force' behind the plaintiff's deprivation of federal rights." <u>Bryan County Commissioners v. Brown</u>, 520 U.S. 397, 407 (1997) (emphasis in original). To show that "deliberate conduct" was the "moving force", a plaintiff must show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Id</u>. at 410.

A plaintiff may prove a municipal action constitution a policy by "the existence of widespread practice that… is so permanent and well settled as to constitute a custom or usage with the force of law." <u>Gillette v. Delmore</u>, 979 F.2d at 1349 (internal citations omitted.) But such a custom or informal policy requires "evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." <u>Id.</u> Isolated or sporadic incidents are insufficient to show a custom or practice as a matter of law. <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir, 1996). Rather, the practices must be of "sufficient duration, frequency, and consistency that the conduct has become the traditional way of carrying out policy." <u>Id</u>.

Plaintiff cannot meet her burden here. She must show that a City custom or practice was the moving force behind Stallworth's deprivation of her constitutional rights in this instance.  Bryan County, 520 U.S. at 407.

Stallworth was terminated in 1986 for violations of procedure unrelated to the kind of claim made here; through arbitration, Stallworth gained reinstatement in 1988. DSE, Exh. B (Dunbar Decl.), para. 2.  Stallworth met plaintiff ten years later, in November 1998.  Plaintiff's hyperbole aside, there is no pattern of sexual battery by Stallworth from 1988 (when he was reinstated) to December 27, 2002 (when the alleged incident here occurred).  Id. at paras. 3-6.

While plaintiff may sensationalize prior complaints contained in a very few IA files,[2] there is no credible, admissible evidence that would forecast the alleged rape of Stewart at Stallworth's RV.  Inadmissible hearsay, does not suffice.  Further, the prior incidents are not sufficiently similar to the claims that form the basis of this lawsuit, they cannot form the basis for liability against the City.  Rogan v. City of Los Angeles, 668 F. Supp. 1384, 1395 (C.D. Cal 1987), citing Languirard v. Hayden, 717 F.2d 220, 227-228 (5th Cir. 1983); see also Fraire v. City of Arlington, 957 F.2d 1268, 1278-1279 (5th Cir. 1992).

---

[2] A 1998 Barrett complaint was investigated, and sustained against Stallworth for failing to collect evidence; the aspects of the complaint that Stallworth had made sexual comments and contact were not sustained because there was no corrobating evidence. Stallworth received a written reprimand. The 1999 Meredith complaint was investigated, and the claim against Stallworth sustained for inappropriate language. He was disciplined with a one-day suspension.  The Smith 2003 complaint occurred after and was filed after December 27, 2002.  That complaint involved an incident at work where Stallworth was alleged to have rubbed a police dispatcher's shoulder, and was sustained. DSE, Exh. B, paras. 3-6.

### 2. No Deliberate Indifference

That a plaintiff has allegedly suffered a deprivation of federal rights at the hands of a municipal employee "will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." Bryan County, 520 U.S. at 406-07 (emphasis in original). The plaintiff must show that some act of the municipality itself, taken with "deliberate indifference as to its known or obvious consequences" led the employee to deprive the plaintiff of his federal rights. A showing of simple, or even heightened, negligence will not suffice. Id. The deliberate indifference standard is "a stringent standard of fault" and requires proof that the "plainly obvious consequence" of a policy decision would be the injury suffered by the plaintiff. Id.

Significantly, this is not a case involving any overt statement or conduct by a policy making official. Plaintiff seeks to recover on the theory that the City was aware of a purported pattern of civil rights violations by Officer Stallworth, but took no steps to intervene. Plaintiff's theory is factually and legally without merit.

Stewart cannot show that the City allowed unconstitutional conduct by "errant municipal officials" or that any similar misconduct went unpunished. Gillette, 979 F.2d at 1379.

As to Stewart's own IA claim against Stallworth, her accusation that the City "ratified" Stallworth's alleged conduct has no basis. Indeed, based on the Internal Affairs investigation, the Police Department recommended that Stallworth be terminated. DSE, Exh. B, para. 3. The Department has disciplined Stallworth in the past and currently seeks to terminate him. Id. at paras. 3-6. There is no basis under these circumstances for a claim of deliberate indifference or ratification of unconstitutional conduct, or of a pattern of

unconstitutional activity by a subordinate employee that has gone unpunished.

In sum, while Stallworth is far from an exemplary officer, his prior history is insufficient to support Monell liability against the City. Those records show at most isolated and sporadic incidents, for which Stallworth was nevertheless disciplined and for which he now faces termination. As such the evidence fails to show a basis for liability against the City as a matter of law, and the City's motion should be granted accordingly.

## IV. CONCLUSION

Plaintiff attempts to transform a most personal, sexual relationship into a claim against the City of Oakland. For the foregoing reasons, plaintiff is barred by the Government Tort Claims Act, the California statutes of limitation, and the requirements of a Monell claim. The claims against the City should be dismissed.

Dated:  November 22, 2004

JOHN A. RUSSO, City Attorney
RANDOLPH W. HALL, Assistant City Attorney
RACHEL WAGNER, Supervising Trial Attorney
CHRISTOPHER KEE, Deputy City Attorney

By: _____/S/_____
Attorneys for Defendant
CITY OF OAKLAND